**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Munster Real Estate, LLC,　　　　　　　　　　　Civil No. 18-2120 (DWF/ECW)

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM
OPINION AND ORDER**

Webb Business Promotions, Incorporated
and Alan Webb,

　　　　　　Defendants.

---

Carl E. Christensen, Esq., Christensen Law Office PLLC, counsel for Plaintiff.

Matthew J. Schaap, Esq., and Robert B. Bauer, Esq., Dougherty, Molenda, Solfest, Hills & Bauer P.A., counsel for Defendants.

---

**INTRODUCTION**

　　　　Plaintiff Munster Real Estate, LLC ("Plaintiff" or "Munster") brought this suit alleging various causes of action arising out of Defendants Webb Business Promotions, Inc.'s ("WBP"), and Alan Webb's ("Webb" collectively, "Defendants") alleged infringement of Plaintiff's trademarks.  Plaintiff now moves for a preliminary injunction to enjoin Defendants from selling any straw product bearing an appellation of source that is similar to Plaintiff's MAGIC STRAWS® and MILK MAGIC® trademarks, including but not limited to any straw product bearing the terms "magic milk straws," "magic straw," and "magic sipper."  For the reasons discussed below, the Court grants Plaintiff's motion.

## BACKGROUND

Munster holds a registration for MAGIC STRAWS® and MILK MAGIC® trademarks for certain beverage products. (Doc. No. 1 ("Compl.") ¶ 4.) Those products include a drinking straw with "flavor beads" inside it, which add flavor to milk when sipped through the straw. (Doc. No. 17 ("Defs.' Mem.") at 2.) Munster's predecessor in the trademark was Magic Straws, LLC ("Magic Straws"). On September 13, 2013, Magic Straws and WBP entered a business relationship whereby Magic Straws would supply the milk straw product to WBP. (Defs.' Mem. at 3.) But the relationship deteriorated. On April 16, 2015, Magic Straws sued WBP in Dakota County District Court, in *Magic Straws, LLC v. Webb Business Promotions, Inc.*, Case No. 19HA-CV-15-1358. (*Id.*) Magic Straws counterclaimed alleging that WBP had infringed its MAGIC STRAWS® and MILK MAGIC® marks. (*Id.*) On May 13, 2016, the parties reached a settlement agreement. (Compl. ¶ 23, Ex. B ("Agreement").)

In the Agreement, WBP acknowledged Magic Straws' ownership of the disputed marks. (*Id.* at 2.) WBP agreed not to sell flavored straws or components of flavored straws affixed with the terms "'Magic Straws' or 'Milk Magic,' or any confusingly similar terms or phrases[.]" (*Id.* at 3.) The parties also agreed to a carve-out in the agreement which allowed WBP to use "the word 'MAGIC,' alone or in combination with any other words, phrases, numbers, symbols, logos or other representations, in a manner that does not infringe the MILK MAGIC® Mark, the MAGIC STRAWS® Mark, or any common law trademark rights associated therewith." (*Id.*) The parties dispute the intended scope of that carve-out provision. WBP claims it negotiated the carve-out in

part because one of its previous suppliers already manufactured flavored milk straws in Europe under the brand "Magic Sippers." (Mem. in Opp. at 4.) But Munster presented evidence that in negotiating the settlement agreement, it rejected a proposed carve-out for the specific term "Magic Sippers," because it insisted that term was confusingly similar to its trademarks. (Doc. No. 20 ("Christensen Decl.") ¶¶ 12-14, Ex. F, G, H.)

Munster now claims that WBP breached the settlement agreement and infringed upon its trademarks both through its website and in a retail store. WBP's website, www.webbcandy.com, advertised straws with the terms "magic milk straws" and "magic straw" affixed to them. (Compl. ¶ 26.) And on September 6, 2017, Jon Tollefson, the managing member of Munster, saw WBP beverage products branded as "magic sipper" on the shelf at a Cub Foods store in Shakopee, Minnesota. (Compl. ¶ 27.)

WBP claims the webbcandy.com website is targeted to retailers, not to consumers. (Defs.' Mem. at 5.) That site does contain a link to another site, milkstraws.com, which does sell milk straws directly to consumers. (*Id.*) But WBP asserts that Defendants did not realize the site was still active, and removed it as soon as they learned of it. (*Id.*) As to its products in retail stores, WBP says it made its product packaging substantially different from Munster's product to avoid customer confusion, featuring darker colors, a different font, and a cartoon dog rather than a cartoon cow. *(Id.)*

On July 24, 2018, Munster brought this suit asserting five claims: (1) federal trademark infringement; (2) federal unfair competition; (3) common law unfair competition; (4) violation of the Minnesota Deceptive Trade Practices Act; and (5) breach of contract. On August 31, 2018, Munster moved for a preliminary injunction.

3

## DISCUSSION

**I.  Legal Standard**

The Court considers four factors in determining whether to grant a preliminary injunction: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the non-moving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

**II.  Likelihood of Success on the Merits**

To begin, the Court considers Plaintiff's likelihood of succeeding on the merits of its claims. In the Eighth Circuit, the likelihood-of-success factor is the most important of the four *Dataphase* factors. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). The moving party need not "prove a greater than fifty per cent likelihood that [it] will prevail on the merits," *Dataphase*, 640 F.2d at 113, but rather must demonstrate a "fair chance of prevailing," *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008).

Plaintiff brings five claims against Defendants: (1) federal trademark infringement; (2) federal unfair competition; (3) common law unfair competition;

(4) violation of the Minnesota Deceptive Trade Practices Act; and (5) breach of contract. (Compl. ¶¶ 45-71.) The core dispute of each claim is whether Defendants' use of "Magic Sippers" is confusingly similar to Plaintiff's MAGIC STRAWS® and MILK MAGIC® trademarks, *i.e.*, whether Defendants are infringing Plaintiff's trademarks.[1]

To establish a claim for trademark infringement, a plaintiff must show that: (1) it has a valid, protectable trademark, and (2) the unauthorized use of that trademark creates a likelihood of confusion. *See George & Co., LLC v. Xavier Enter., Inc.*, Civ. No. 09-29973, 2009 WL 4730331, at *4 (D. Minn. Dec. 12, 2009). A court considers six factors to determine whether there is a likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the alleged infringing mark; (3) the degree to which the allegedly infringing product competes with the plaintiff's goods; (4) the alleged infringer's intent to confuse the public; (5) the degree of care

---

[1] In its breach-of-contract claim, Plaintiff claims that Defendants breached the Agreement. To succeed on the merits of this claim, Plaintiff must prove that: (1) Plaintiff and Defendants formed a valid contract; (2) Plaintiff performed any conditions precedent to its right to demand Defendants' performance under the contract; and (3) Defendants breached the parties' contract. *See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Here, the parties do not dispute that Plaintiff has met the first two requirements. Defendants instead argue that they have not breached the Agreement. The Agreement unambiguously provides that Defendants shall not "sell flavored straws . . . affixed with the terms or phrases 'Magic Straws' or 'Milk Magic,' or any *confusingly similar* terms or phrases." (Compl. ¶ 23, Ex. B (emphasis added).) Because Defendants have admitted to selling "Magic Sippers," Plaintiff's breach-of-contract claim turns on whether the phrase "Magic Sippers" is confusingly similar to the phrases "Magic Straws" or "Milk Magic." (*See id.* (prohibiting Defendants from selling products with confusingly similar terms or phrases).)

reasonably expected of potential customers; and (6) evidence of actual confusion.

*Georgia-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 775 (8th Cir. 2010) (citations omitted).

Here, the Court finds that, on the evidence before it, Plaintiff has adequately demonstrated a likelihood of success on the merits of its trademark-infringement claim. First, the Court finds that because Plaintiff's marks are registered, they are presumptively distinctive and strong. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). Plaintiff has also presented evidence in the form of photographs and website links showing that Defendants market and sell milk straw products that consumers are likely to confuse with Plaintiff's MAGIC STRAWS® products. (Doc. No. 13 ("Tollefson Decl.") ¶¶ 17-18, Exs. D, E.) Plaintiff has also presented evidence that its milk straws and Defendants milk straws are in direct competition, both being sold for $1.99 each in grocery stores. (Tollefson Decl. ¶ 18, Ex. E.) The low price of milk straws, as it pertains to the general public, likely indicates that end consumers will exercise minimal care in purchasing the product. *See Gateway, Inc. v. Companion Prod., Inc.*, 384 F.3d 503, 510 (8th Cir. 2004). Finally, the Court notes that although Plaintiff has not presented any evidence of actual consumer confusion, "the plaintiff is not required to bring forth incidents of actual confusion to succeed in an infringement case," particularly at this early stage of the litigation. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 768 (8th Cir. 2010). Taken together, these facts demonstrate

that a reasonable consumer is likely to be confused by the use of Defendants' "magic sippers."

Based on the foregoing, the Court concludes that Plaintiff's claims have a "fair chance of prevailing," which is enough for the likelihood-of-success factor to weigh in favor of Plaintiffs.

## III. Irreparable Harm

Next, the Court assesses whether Plaintiff is likely to suffer irreparable harm if the Court denies its motion. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Speculative injury is insufficient to justify a preliminary injunction, and a moving party's long delay after learning of the threatened harm may indicate that the harm is neither great nor imminent. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894-95 (8th Cir. 2013); *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999). The moving party's failure to show irreparable harm absent an injunction is sufficient to warrant denial of a request for preliminary injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

Here, Plaintiff argues that they will suffer irreparable harm unless Defendants stop selling Magic Sippers. Plaintiff contends that without a preliminary injunction, even if Plaintiff ultimately prevails on the merits, the loss of goodwill will not be recoverable and cannot be adequately compensated by money damages. Specifically, Plaintiff will be unable to control consumer expectations regarding their product. Defendants contend

that Plaintiff has an adequate remedy at law—*i.e.*, monetary damages—for any harm it may suffer. Defendants also argue that if Plaintiff was sincere that its harm is irreparable, then Plaintiff would have brought suit closer to the time it discovered Defendants' allegedly infringing products.

Based on the foregoing, the Court concludes that the loss of goodwill and damage to Plaintiff's ability to control expectations regarding its product are sufficient to constitute irreparable harm. Contrary to Defendants' argument, the Court finds that monetary damages will be insufficient to repair the damage to Plaintiff's goodwill amongst consumers. Moreover, to the extent that Plaintiff has shown a likelihood of success on its trademark-infringement claim, the Court can presume irreparable harm. *See J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 689 (D. Minn. 2007) ("Irreparable harm is presumed where there is trademark infringement."). The Court therefore finds that this factor weighs in favor of granting an injunction.

### IV. Balance of Harms

In addition to considering whether Plaintiff will suffer irreparable harm, the Court considers whether the harm that Plaintiff would suffer if the Court denies its motion outweighs the harm that Defendants would suffer if the Court grants the motion. *See, e.g.*, *Gen. Motors*, 563 F.3d at 320. As outlined above, Plaintiff faces irreparable harm in the form of loss of goodwill, damage to Plaintiff's ability to control expectations regarding its product, and infringement of its protected trademarks. Defendants, on the other hand, claim that an injunction will prevent WBP "from engaging in lawful

competition and continuing to grow its market share in the milk straw business," as well as "eliminate a stream of income for WBP," which may adversely affect staffing and employment. (Defs.' Mem. at 15.) Defendants also contend that they will be harmed through the loss of the time and resources they invested in marketing and selling their milk straw products. (*Id.*) Based on the foregoing, the Court finds that the balance-of-harms factor is neutral.

**V.      Public Interest**

Finally, the Court considers whether any public policy considerations bear on whether the Court should grant or deny Plaintiff's motion. *See, e.g.*, *Chlorine Inst. Inc. v. Soo Line R.R.*, 792 F.3d 903, 916 (8th Cir. 2015). Where, as here, a plaintiff has shown a likelihood of success on a trademark-infringement claim, public policy weighs in favor of protecting consumers against the infringement by enjoining a defendant from distributing the infringing products. *J&B Wholesale Distrib.*, 621 F. Supp. 2d at 689. Public policy also weighs in favor of enforcing settlement agreements. *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007). The core of Munster's claims involves WBP and Webb's alleged trademark infringement and breach of the Agreement. Accordingly, the public interest factor also weighs in favor of the requested injunctive relief.

Based on the foregoing, the Court concludes that the *Dataphase* factors collectively weigh in favor of granting Plaintiff's motion. Plaintiff has sufficiently demonstrated the need for the extraordinary remedy of a preliminary injunction.

# ORDER

Based on the foregoing, and all of the pleadings, files, and records herein, the Court, being fully advised in this matter, determines that Plaintiff has met all of the factors for issuing a preliminary injunction in this case. **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Preliminary Injunction (Doc. No. [15]) is **GRANTED**.[2]

2. Defendants, their agents, servants, employees, attorneys, and all others are enjoined from selling any straw product bearing any appellation of source that is similar to Plaintiff's MAGIC STRAWS® AND MILK MAGIC® trademarks, including but not limited to any straw product bearing the terms "magic milk straws," "magic straw," and "magic sipper." Defendants have one month from the effective date of this preliminary injunction to comply with this prohibition.

3. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the preliminary injunction shall become effective upon Munster Real Estate, LLC providing security to the Clerk of Court in the form of cash or a bond in the amount of One Hundred Thousand Dollars ($100,000).

---

[2] The Court believes that it is in the best interests of the parties to settle this case. If the parties would like the Court's assistance in pursuing a settlement, they may contact chambers and the Court will help coordinate priority scheduling of a settlement conference with the Magistrate Judge.

4. The preliminary injunction shall be effective upon the posting of the bond and shall remain in effect until a trial on the merits of this case, through a permanent injunction hearing, or until further order of this Court.

Dated: October 26, 2018        s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge